## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| John Johnson,<br><br>            Plaintiff,<br><br>v.<br><br>Experian Information Solutions, Inc.,<br>Equifax Information Services, LLC,<br>Trans Union LLC, and LoanCare, LLC,<br><br>            Defendants. | **Case No.:** 0:21-cv-01977<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>1.**F   CRA, 15 U.S.C. § 1681 *et<br>seq.*** |

Plaintiff John Johnson, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendants Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); Trans Union, LLC ("Trans Union"); and LoanCare, LLC, ("LoanCare").

## I.      <u>INTRODUCTION</u>

1.      Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against the CRA Defendants Experian, Equifax, and Trans Union, each a consumer reporting agency, for reporting inaccurate information on Plaintiff's consumer report. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

1

2.      Plaintiff's Complaint also alleges violations of the FCRA, against Defendant LoanCare for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from Experian, Equifax, and Trans Union.

## II.      JURISDICTION AND VENUE

3.      The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

4.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

5.      Defendants transact business here; as such, personal jurisdiction is established.

## III.      PARTIES

6.      John Johnson is a natural person residing in the city of Lester Prairie in McLeod County, Minnesota.

7.      Plaintiff is a *consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

8.      Defendant LoanCare is a financial institution engaged in the business of giving credit and collecting debt.  LoanCare is also a *furnisher*, as contemplated in 15 U.S.C. § 1681s-2. Upon information and belief, LoanCare is regularly engaged in the business of furnishing credit information to the consumer reporting agencies.  LoanCare is headquartered at 3637 Sentara Way, Virginia Beach, VA, 23452.  LoanCare can be served through its registered agent, C T Corporation System, located at 4701 Cox Road, Ste 285, Glen Allen, VA, 23060-6808.

9.      Defendant Experian is a "consumer reporting agency," as defined in 15

2

U.S.C. § 1681a(f)). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

10.     Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309. Equifax can be served through its agent for service of process, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

11.     Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through its agent for service of process, Prentice Hall Corporation, located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

12.     Upon information and belief, the CRA Defendants, Experian, Equifax,

and Trans Union, disburse consumer reports to third parties under contract for monetary compensation.

13.     At all relevant times, Defendants LoanCare, Experian, Equifax, and Trans Union acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

14.     Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

### IV.     FACTUAL BACKGROUND

15.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

16.     The United States Congress decided that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

17.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

18.     The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

4

19.     The CRA Defendants Experian, Equifax, and Trans Union report consumer information about Plaintiff and other consumers through the sale of consumer reports.

20.     The CRA Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

21.     The CRA Defendants obtain consumer information from various sources, including furnishers that provide consumer information to the CRAs, and information the CRAs independently sources itself or through third party providers, vendors or repositories, including computerized reporting services like PACER.

22.     The diligence the CRA Defendants exercise in recording consumer bankruptcy filings is not replicated in their reporting of the effects of bankruptcy proceedings and orders upon certain accounts, including accounts that are reaffirmed during a consumer's bankruptcy.

23.     Consequently, the CRA Defendants routinely report inaccurate, incomplete,

outdated, and materially misleading information about consumers after they have been discharged from bankruptcy, without verifying or updating the information as required by § 1681(e)(b), despite possessing information that indicates their reporting is inaccurate.

24.     The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models) to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the CRA Defendants' reports.

25.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

26.     The information reported by the CRA Defendants contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in the CRA Defendants' consumer reports.

27.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

28.     FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

29.     "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed.

6

30.    In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist.

31.    The more severe, recent, and frequent late payments are the greater the harm to the FICO Score.

32.    However, after a reportedly delinquent account has been remedied, a consumer's FICO score may increase.

33.    The CRA Defendants voluntarily obtained Plaintiff's consumer bankruptcy information and reported it in individual account tradelines and the Public Records section of Plaintiff's consumer report.

34.    The CRA Defendants are well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

35.    The CRA Defendants are also aware of the effect of a reaffirmation agreement, which allows a consumer to remain liable for the debt and excludes the debt from the bankruptcy discharge.

36.    Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources the CRA Defendants obtain the bankruptcy case information.

37.    Additionally, the CRA Defendants receive actual notice of reaffirmation agreements from furnishers of account/tradeline information.

7

38.     The Defendant CRAs also receive constructive notice of reaffirmation agreements from furnishers of tradeline information that provide data indicating that a consumer is continuing to make regular payments on a pre-bankruptcy debt after receiving their discharge order.

39.     In this case, Plaintiff also specifically notified the CRA Defendants that the debt was reaffirmed, but the CRAs rejected this specific notice, despite also possessing or having access to information that confirmed the debt was in fact reaffirmed.

40.     Although the CRA Defendants were notified of their inaccurate reporting and had the information necessary to correctly report Plaintiff's Account, the CRA Defendants failed to verify the information.

41.     Instead, the CRA Defendants followed unreasonable procedures that allowed them to blindly rely on the furnisher's deficient investigation and report its results, despite possessing conflicting information about the Account.

42.     Rather than following reasonable procedures to assure maximum possible accuracy, the CRA Defendants inaccurately report information regarding pre-bankruptcy debts even if that information ignores or contradicts information known and reported by the CRAs themselves.

43.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against the CRA Defendants for their inaccurate reporting following a consumer bankruptcy.

44.     Therefore, the CRA Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, including those that result in inaccurate account

and payment statuses, both before and after receiving a dispute from the consumer.

*Allegations Specific to the Credit Reporting of Plaintiff*

45.     On or about June 15, 2016, Plaintiff and his wife obtained a mortgage with Lakeview Loan Servicing LLC, Account #623002*** (the "Account"). LoanCare LLC is the mortgage servicer for Lakeview Loan Servicing LLC.

46.     On or about December 19, 2019, Plaintiff and his wife filed for voluntary bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota petition number 19-43805.

47.     On or about March 5, 2020, Plaintiff and his wife reaffirmed their obligations under the Account, whereby Plaintiff remained personally liable/responsible for continued payment on the Account. The Account was therefore not included in Plaintiff's bankruptcy discharge.

48.     Plaintiff and his wife received a discharge in bankruptcy court on or about March 17, 2020.

49.     Plaintiff and his wife filed for bankruptcy and reaffirmed the Account to rebuild and improve their credit.

50.     After Plaintiff's bankruptcy was discharged, Plaintiff was eager to obtain a "fresh start."

51.     Sometime after the bankruptcy discharge, Plaintiff and his wife obtained their Experian, Equifax, and Trans Union consumer reports to ensure that their credit account tradelines and bankruptcy were being reported accurately.

52.     Plaintiff and his wife learned the CRA Defendants Experian, Equifax, and

Trans Union were inaccurately reporting that Plaintiff and his wife's reaffirmed Account was included in bankruptcy, and subject to bankruptcy coding that conveys to creditors/lenders that the Account was discharged or delinquent even though Plaintiff and his wife continued to make ongoing payments on the Account.

53.     Before filing for bankruptcy, Plaintiff and his wife made timely monthly payments on the Account.

54.     Plaintiff reaffirmed the Account during bankruptcy, remaining personally liable for the obligation. The Account (debt) was indisputably not discharged. Plaintiff did this to maintain some credit history and to rebuild/re-establish credit through timely monthly payments on the reaffirmed Account.

55.     However, when Plaintiff pulled Plaintiff's consumer reports, Plaintiff discovered that Experian, Equifax, and Trans Union were not reporting the Account's accurate payment history despite reaffirmation of the debt.

56.      Experian, Equifax, and Trans Unions' reporting was patently false and materially misleading, as the Account was reaffirmed and not discharged by Plaintiff's bankruptcy.

57.     Experian, Equifax, and Trans Unions' reporting was patently false and materially misleading, as Plaintiff continued to make timely monthly payments on the Account, which Plaintiff believes were also reported to Experian, Equifax, and Trans Union.

58.     The CRA Defendants failed to report the Account's accurate payment history and ongoing payments.

59.     The CRA Defendants reported inaccurate payment statuses that indicate the Account was included in and/or discharged in bankruptcy, instead of reaffirmed with its actual status and payment history.

### *Plaintiff's Disputes*

60.     On or about July 24, 2020, Plaintiff and his wife separately sent letters to Experian, Equifax, and Trans Union disputing their inaccurate reporting of the Account.

61.     The letters specifically advised that Plaintiff and his wife did not include the Account in Plaintiff's bankruptcy, Plaintiff remained personally obligated for the Account, and Plaintiff continued to make regular payments on the Account.

62.     Upon information and belief, Experian, Equifax, and Trans Union received Plaintiff's dispute letters.

63.     Upon information and belief, Experian, Equifax, and Trans Union forwarded Plaintiff's disputes to LoanCare within 5 business days of receipt.

64.      Upon information and belief, the CRAs did not respond to Plaintiff or his wife's dispute letters.

65.     The CRA's stopped reporting the Account on Plaintiff's wife's credit reports, but inexplicably continued reporting the Account as included in Plaintiff's bankruptcy.

66.     Upon information and belief, the CRA Defendants Experian, Equifax, and Trans Union did not investigate Plaintiff's dispute, and pursuant to their unreasonable procedures, merely forwarded an automated dispute form to LoanCare, despite possessing information indicating the Account was reaffirmed, and/or the ability to

11

independently verify the Account reaffirmation through the same sources they receive consumer bankruptcy information.

67.     Rather than perform a reasonable investigation based on Plaintiff's dispute, readily available public records, and information known by the CRA Defendants through Plaintiff's reported payment history on the Account, the CRA Defendants merely parroted information furnished by LoanCare despite awareness that the information was factually inaccurate and conflicted with information known by the CRAs.

68.     Upon information and belief, LoanCare failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Experian, Equifax, and Trans Union.

69.      LoanCare failed, among other things, to review all relevant information regarding the dispute or ignored this information. Consequently, LoanCare continued to furnish inaccurate data to Defendants Experian, Equifax, and Trans Union despite knowledge of Plaintiff's dispute and otherwise possessing information from which LoanCare should have reported accurate information about the Account.

### *Plaintiff's Damages*

70.     Upon information and belief, had the CRA Defendants accurately reported the Account with its correct payment history and positive continuing payments, Plaintiff's credit scores would have been better.

71.     Upon information and belief, after Plaintiff's bankruptcy discharge, Plaintiff applied for credit opportunities with Spire Credit Union, and Ally Financial, and was denied due to the inaccurate reporting of the Account by Defendant.

72.     Upon information and belief, after Plaintiff's bankruptcy discharge, Plaintiff applied for credit opportunities with Capital One and Mechanics Bank and was denied approved at less than favorable rates and lower credit limit due to the inaccurate reporting of the Account by Defendant.

73.     Defendants' inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to Hard and Soft Inquiries by Defendants during the process of Plaintiff's credit applications.

74.     As a direct result of the CRA Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

75.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, sleepless nights, stress, anger, frustration, shock, embarrassment, and anxiety.

76.     Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

## V.     COUNT I
### CRA Defendant Experian, Equifax, and Trans Union
### (Violations of the FCRA, 15 U.S.C. § 1681 *et. seq.*)

77.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

78.     The FCRA requires consumer reporting agencies, like the CRA

Defendants, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

79.     The CRA Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report.

80.     Additionally, the CRA Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to report accurate information when placed on notice that the information Defendants are reporting is inaccurate, and/or otherwise contradicted by information known by Defendants or reasonably available to Defendants.

81.     Upon information and belief, the CRA Defendants regularly conduct voluntary public records searches with the intention of including bankruptcy information on the consumer reports it sells to other parties.

82.     Upon information and belief, the CRA Defendants voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge.

83.     The CRA Defendants inaccurately reported Plaintiff's reaffirmed Account as included in Plaintiff's bankruptcy when Plaintiff continued to make timely payments on the Account, and remained liable for the Account, which was excluded from Plaintiff's discharge.

84.     The CRA Defendants possessed information that indicated Plaintiff reaffirmed the Account.

14

85.    If not, information concerning reaffirmation agreements is reasonably available from the same sources of consumer bankruptcy information the CRA Defendants procure.

86.    The CRA Defendants knew or should have known of their obligations under the FCRA. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving the CRA Defendants from which they are on notice of their unreasonable procedures concerning the reporting of debts during and after bankruptcy, including reaffirmed debts.

87.    Even after Plaintiff notified the CRA Defendants of the inaccurate information they included in Plaintiff's credit file, Experian, Equifax, and Trans Union continued to inaccurately report the reaffirmed Account as "included in bankruptcy," despite notice that the Account was reaffirmed, and the ability to independently confirm the information detailed in Plaintiff's dispute.

88.    The CRA Defendants failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the furnisher's investigation of the dispute and blindly reporting its results, despite possessing conflicting information as well as the ability to independently confirm that Plaintiff's Account was in fact reaffirmed as Plaintiff indicated.

89.    The CRA Defendants also failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by failing to independently verify that Plaintiff reaffirmed the Account following Plaintiff's dispute, which information is reasonably available from the

same sources the CRAs procure consumer bankruptcy information.

90.     When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

91.     When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

92.     Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

93.     Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, the CRA Defendants violated the FCRA by failing to perform a reasonable reinvestigation of the disputed information even after Plaintiff notified them of their inaccurate reporting of the Account.

94.     Defendants Experian, Equifax, and Trans Unions' violations of 15 U.S.C. § 1681i include, but are not limited to the following:

    i.     Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

    ii.    Failing to consider all relevant information while investigating Plaintiff's dispute.

    iii.    Failing to include all relevant information when notifying LoanCare of Plaintiff's dispute.

95.    Instead of reasonably reinvestigating Plaintiff's dispute, the CRA Defendants did not respond to Plaintiff's dispute and continued to report the reaffirmed Account as included in Plaintiff's bankruptcy.

96.    The CRA Defendants' acts, as described above, were done willfully and knowingly; or, alternatively were negligent.

97.    The CRA Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

98.    Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by the CRA Defendants' failure to report that the debt was reaffirmed.

99.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, sleepless nights, and anxiety.

100.    The CRA Defendants are direct and proximate causes of Plaintiff's damages.

101.    The CRA Defendants are substantial factors in Plaintiff's damages.

102.    Therefore, the CRA Defendants are individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief

permitted by 15 U.S.C. § 1681 *et seq.*

## VI.   COUNT II
### Defendant LoanCare
### (Violations of the FCRA, 15 U.S.C. § 1681s-2(b))

103.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

104.   The FCRA requires that upon receipt of a consumer's dispute from a CRA, furnishers of information like LoanCare conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, report those results to all consumer reporting agencies to which the furnisher has provided inaccurate information.

105.   LoanCare knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgated by the Federal Trade Commission, and detailed in case law.

106.   Additionally, LoanCare possesses or could easily obtain substantial written materials that detail its duties as a furnisher under the FCRA. Despite knowing these legal obligations, LoanCare acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

107.   Plaintiff disputed the LoanCare tradeline through all three national CRAs: Experian, Equifax, and Trans Union.

108.   Thereafter, the consumer reporting agencies forwarded Plaintiff's disputes to LoanCare, notifying LoanCare that Plaintiff was disputing the information it had

furnished about the Account.

109.   LoanCare received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge necessary to report the Account accurately.

110.   LoanCare continues to furnish inaccurate information about Plaintiff to Experian, Equifax, and Trans Union, even though LoanCare possessed all relevant information about the Account and the inaccuracy that Plaintiff disputed.

111.   The inaccurate LoanCare Account materially and adversely affects Plaintiff's credit standing.

112.   On at least one occasion within the past two years, by example only and without limitations, Defendant LoanCare violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes to Experian, Equifax, and Trans Union.

113.   LoanCare violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

(a)   Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

(b)   Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

(c)    Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(d)    Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

(e)    Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

(f)    Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

(g)    Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

114.    LoanCare unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

115.    LoanCare is a direct and proximate cause, as well as substantial factor in causing damage and harm to Plaintiff.

116.    Consequently, LoanCare is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law.

Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## VII.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff John Johnson respectfully requests judgment be entered against Defendants for the following:

A.  Declaratory judgment that Defendants violated the FCRA;

B.  Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C.  Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F.  Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G.  Any other relief that this Court deems appropriate.

## VIII.  JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

///

Respectfully submitted this 3rd day of September 2021.

> */s/Jenna Dakroub*
> Jenna Dakroub, MN # 0401650
> **PRICE LAW GROUP, APC**
> 8245 N. 85th Way
> Scottsdale, AZ 85259
> Telephone: (818) 600-5513
> Fax: (818) 600-5413
> Email: jenna@pricelawgroup.com
> *Attorney for Plaintiff John Johnson*